IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARL FULK**, an individual ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. |
| ) | |
| **THE UNITED STATES OF AMERICA,** ) | |
| ) | |
| SERVE: ) | |
|     Mr. Donald S. Boyce ) | |
|     U.S. Attorney ) | |
|     Southern District of Illinois ) | |
|     9 Executive Drive ) | |
|     Fairview Heights, IL 62208 ) | |
| ) | |
| SERVE: ) | |
|     The Honorable Loretta E. Lynch ) | |
|     U.S. Attorney ) | |
|     U.S. Department of Justice ) | |
|     950 Pennsylvania Avenue, NW ) | |
|     Washington, D.C. 20530 ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COMES NOW Plaintiff, Carl Fulk, by and through undersigned counsel and complaining of Defendant UNITED STATES OF AMERICA, states as follows:

1. JURISDICTION: Jurisdiction is proper under 28 U.S.C. §1346(b). This Count is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq. State action claims herein, if any, are brought pursuant to this Court's supplemental jurisdiction, 28 U.S.C. §1367.

2. VENUE: Venue is proper in this District pursuant to 28 U.S.C. §1402(b) and 28 U.S.C. §1346 as Plaintiff is a resident of this Judicial District and, received a significant portion

of his treatment that is complained of within this Judicial District.

3. APPLICABLE LAW: Pursuant to 28 U.S.C. §1346(b), et seq., the law of the State of Illinois applies to those Veterans Administration Medical Center ("VAMC") facilities in Illinois, and the employees or contractors covered by the F.T.C.A. in Illinois; and the law of the State of Missouri applies to the actions of the Missouri VAMC facilities and employees or contractors acting at or for the St. Louis VAMC facilities in Missouri.

4. At all times relevant hereto, Carl Fulk was and is an adult resident and citizen of the State of Illinois and an honorably discharged Veteran of the U.S. military.

5. At all times relevant hereto, Department of Veterans Affairs was a "Federal Agency" as defined in 28 U.S.C. §2671, et seq., and the facilities and individuals at issue herein were acting within the scope of their agency or employment by the United States Department of Veterans Affairs.

6. At all times relevant hereto, the Department of Veterans Affairs owned, operated or controlled the Marion Veterans Affairs Medical Center, a/ka "Marion VAMC" and various VAMC clinics and services in Illinois, including but not limited to Effingham Community Based Outpatient Clinic, as set out herein, and the same were part of the federal government or were a part of a "Federal Agency" as defined in 28 U.S.C. §2671, et seq., and said facilities and each individual providing health care, clinic or hospital services at such facilities as set out herein was acting within the scope of its agency or employment by the United States Department of Veterans Affairs.

7. At all times relevant hereto The Department of Veterans Affairs Medical Center at St. Louis, Missouri, a/k/a "Cochran Veterans Affairs Medical Center", "Cochran VAMC",

"STLVAMC" were and are a part of the Department of Veterans Affairs, which did own, control, manage or operate the John Cochran VAMC and hospital in the City of St. Louis, State of Missouri, and the Jefferson Barracks VAMC in St. Louis County, and did employ physicians, nurses and other licensed medical professionals to practice medicine and/or their health-care related professions, and did hold itself out to the public and to Plaintiff as providing qualified medical and hospital services.

8. At all times relevant hereto, Plaintiff had presented at and was accepted and was being treated as a patient at COCHRAN VAMC, and by and through each individual provider at said facility, and at various times was seen and was a patient at the Marion, Illinois VAMC and/or other Illinois VAMC clinics, and at the times and places set out herein Defendants and each of them owed to Carl Fulk the duty to provide hospital, nursing, medical and/or surgical care with the skill and care of a reasonable physician or other health-care professional in the same or similar circumstances, and the VAMC had the duty to provide such qualified and competent health care professionals and care.

9. At all relevant times, Defendant UNITED STATES OF AMERICA acted by and through the VAMC and its actual and apparent agents and employees, including its physicians, administrators, nurses, technicians, social workers, aides, and including, but not limited to, each medical provider at said facilities and did hold each of said care providers out as its employee or agent, both by express statement and/or by action and uniform or insignia, and Plaintiff did rely upon such representations.

10. An administrative claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671, et seq., was timely made initially on June 17, 2014 and served upon the Department of

Veterans Affairs with acknowledgment letter on June 19, 2014, and greater than six months have passed since said claim date without denial or decision by that agency.

11. At all times relevant hereto, each of the physicians at the John Cochran VAMC that provided care to Plaintiff was a physician licensed in the State of Missouri and holding themselves out to the public and to Plaintiff as a qualified physician able to provide reasonable medical and health care, and capable in their respective field or specialty.

12. At all times relevant hereto, each of the physicians at the Marion VAMC that provided care to Plaintiff did so in follow up and coordination with the St. Louis VAMC and was a physician licensed in the State of Illinois and holding themselves out to the public and to Plaintiff as a qualified physician and expert in their respective field or specialty.

13. At all times relevant hereto, each of the physicians at the Illinois VAMC clinics that provided care to Plaintiff did so in follow up and coordination with the St. Louis, Missouri and Marion Illinois VAMC and were physicians licensed in the State of Illinois and holding themselves out to the public and to Plaintiff as a qualified physician and expert in their respective field or specialty. .

14. At all times relevant hereto, each of the nurses, physician assistants, radiologists or technicians, nurse practitioners, or other medical care givers at each of the VAMC facilities in Illinois that provided care and services to Plaintiff during the period from June 26, 2012 through March 17, 2014 did so in follow up and coordination with the St. Louis and/or Marion VAMC facilities and was a professional medical provider licensed in the State of Illinois and holding themselves out to the public and to Plaintiff as qualified and capable in their field of practice.

15. At all times relevant hereto, each of the nurses, physician assistants, radiologists

or technicians, nurse practitioners, or other medical care givers at each of the VAMC facilities in Missouri that provided care and services to Plaintiff during the period from June 26, 2012 through March 17, 2014 did so in follow up and coordination with the St. Louis VAMC and was a professional medical provider licensed in the State of Missouri and holding themselves out to the public and to Plaintiff as qualified and capable in their field of practice.

16. At all times relevant hereto, Plaintiff Carl Fulk was an honorably discharged veteran of the United States Armed Forces, and Defendant UNITED STATES OF AMERICA undertook a continuing course of care for Carl Fulk for many years with a continuity of visits and care.

17. On or about January 11, 2012, Carl Fulk presented to the Marion VAMC for a screening colonoscopy which identified a large rectal tumor with ulceration. Plaintiff was referred to the Cochran VAMC for treatment.

18. On or about February 7, 2012, Plaintiff Carl Fulk underwent a proctoscopy and endorectal ultrasound with findings of a transmural lesion assisted with a biopsy confirming moderately differentiated adenocarcinoma.

19. Plaintiff subsequently underwent pre-operative neo-adjuvant chemotherapy and radiation treatments.

20. On or about June 26, 2012, Plaintiff Carl Fulk underwent a low anterior intestine resection with loop ileostomy by Dr. Ovunc Bardakcioglu at the John Cochran VAMC in St. Louis. The operation was originally intended to be performed laparoscopically, but was converted to open surgery due to the surgeon's difficulty in accessing and dissecting the tumor. The procedure took approximately 4 hours.

21. On or about July 5, 2012 Plaintiff Carl Fulk was discharged home with an ileostomy that was intended to be reversed later.

22. On or about August 23, 2012 Plaintiff Carl Fulk underwent a gastrograffin enema requested by Darlene Bry, PA-C at COCHRAN VAMC, in order to determine if the colorectal anastomosis was adequately healed so the ileostomy could be closed. The procedure noted that the contrast extravasated posterior to the distal rectum and adjacent to sacrum demonstrating an anastomotic leak.  No repair was attempted.

23. On or about December 28, 2012 Plaintiff presented for his follow-up appointment with Dr. Vorachart Auethavekiat at the Marion VAMC.  During that visit no health care providers made any note or mention of the results from the August 23, 2012 enema. No repair, prophylaxis nor referral was attempted, other than a mention of a 3 month or later follow-up "depending on his reanastmosis" surgery.

24. On or about January 31, 2013 Plaintiff presented for his follow-up appointment and re-evaluation of takedown with Darlene Bry, PA-C and Dr. Terence P. Wade at COCHRAN VAMC. During that visit there was discussion regarding the identification of the anastamotic leak found on August, 2012.  Per the record Plaintiff was scheduled to have a CT of his Abdomen and Pelvis, however it appears that was never completed.  The providers wanted Plaintiff to undergo a gastrograffin study however the necessary equipment was dysfunctional, and he was therefore scheduled to undergo the test at a future date in Marion, Illinois or another facility.  Followup was intended to be with Dr. Dharmarajan.

25. On or about March 14, 2013 Plaintiff underwent a second gastrogaffin enema at an outside facility which again demonstrated the leak was still present.

26. On or about March 18, 2013 Plaintiff's second gastrogaffin enema done by an outside facility was scanned into his VA records and acknowledged by Darlene Bry, PA-C, Dr. Sekhar Dharmarajan, Dr. Terence Wade and Michelle Andrews, RN. However, no repair or prophylaxis was attempted.

27. On or about May 9, 2013 Plaintiff presented for a follow-up appointment with Darlene Bry, PA-C and Dr. Sekhar Dharmarajan. During that visit it was noted that the repeat gastrograffin enema in March, 2013 had shown the leak was still present. Again, no repair, prophylaxis or treatment was attempted. Plaintiff was informed to continue care for his ileostomy.

28. On or about May 16, 2013 Plaintiff underwent a third gastrogaffin enema by Darlene Bry, PA-C at COCHRAN VAMC which reported the leak was still present.  No repair, prphylaxis, referral or treatment was attempted.

29. On that same visit, Plaintiff underwent a flexible sigmoidoscopy at COCHRAN VAMC, in order to better visualize his anatomy. The findings of the sigmoidoscopy showed a stricture of 7 cm from the verge. The stricture was dilated but only up to 15 cm and no further. The site of the leak was seen and noted accordingly. Neither repair nor prophylaxis for the leak was attempted.

30. On or about May 30, 2013 Plaintiff presented for his follow-up appointment with Dr. Vorachart Auethavekiat at Marion VAMC, who was aware of the colonoscopy report indicating the presence of an anastomotic leak, however Dr. Auethavekiat only indicated in his record that there was a "possible leak".  No repair, treatment or prophylaxis was attempted.

31. A little less than a month later in July 2013 Plaintiff had a CT scan of his

abdomen and pelvis, requested by Dr. Lalaine Ramirez-Hom at Marion VAMC, which described a 2 cm gas collection in the presacral area.  No VA followup for the gas collection was scheduled, but plaintiff continued to attend medical followup appointments at the VAMC.

32. On that very same day, Dr. Laline Ramirez-Hom stated she would forward the results to Oncology and JC Surgery. However, no attempt was made to repair nor any follow-up was scheduled until at least several months later.

33. On or about August 28, 2013 Plaintiff presented for his follow-up appointment with Mamta Rani, PA-C at Marion VAMC, who recorded no mention of the leak. No repair nor referral was attempted.

33. Plaintiff followed up as instructed at the Cochran VAMC and the Jefferson Barracks VAMC in St. Louis, and with an assigned primary care provider at Marion VAMC, and reported to his care providers of pain and numbness in his left leg. No action was taken relative to such complaints.  He was not tested for blood flow, infection, sepsis, or other impairment.

34. On March 10, 2014 Plaintiff presented to the Marion VAMC for his 6 month follow-up appointment. At that time Plaintiff informed Amanda Page, RN and Mamta Rani, PA-C that he was experiencing pain in his lower back, traveling down into his foot. No further work-up for his complaints were completed at the time, other than a note stating that he is scheduled to see his primary care physician on March 26, 2014.

35. On that same visit Plaintiffs labs were drawn and demonstrated in high white blood counts, low red blood cells, indicative of significant infection. However, no further-work up was provided to Plaintiff.

36. By March 17, 2014 Plaintiff presented to an outside facility emergency room

where radiographs of his pelvic area demonstrated soft tissue gas noted in the left medial thigh and perineum. Testing further demonstrated likely Fournier gangrene or necrotizing fasciitis, known to be a surgical emergency.

37. On that same day, March 17, 2014, Plaintiff was emergently transferred back to John Cochran VAMC in St. Louis, Missouri where he underwent extensive debridements of the gluteal muscles and an amputation of the left leg in the upper thigh region was performed for Fournier's gangrene.

38. Since then Plaintiff has undergone more than twelve additional surgeries and procedures and a sequent hip disarticulation.

39. Defendant UNITED STATES OF AMERICA, by and through the Department of Veterans Affairs medical facilities, and its employees, agents or apparent agents, committed one or more of the following negligent acts or omissions:

    a. Defendants failed to correct the anastomotic leak in Plaintiff which persisted for almost two years;

    b. Defendants failed to take any corrective or prophylactic action regarding the anastomotic leak when they knew of fluid and/or gas accumulating in the pelvic region of plaintiff;

    c. Defendants failed to adequately or properly followup on plaintiff's anastomotic leak;

    d. Defendants failed to timely or adequately treat or refer Plaintiff for treatment of the anastomotic leak and/or of the fluid collection in plaintiff's abdominal cavity;

    e. Defendants failed to properly or adequately respond with treatment after

    plaintiff's reports of leg numbness and pain or other symptoms of spreading infection;

  f. Defendants prematurely discharged plaintiff from the VA facilities after testing showed a continuing anastomotic leak more than a year after surgery, without proper or adequate observation, care or stabilization of his condition;

  g. Defendants failed to adequately communicate between their departments, clinics and facilities regarding this patient's condition and medical needs;

  40. As a direct and proximate result of one or more of the foregoing negligent acts or omissions, Plaintiff Carl Fulk was caused to suffer a continuing and developing infection in his abdomen and pelvis which spread through the abdominal wall and into his leg, and which caused or contributed to cause infection, sepsis, Fournier's gangrene or other gangrene, and compromise of the circulation and nutrient or oxygen supply to his lower abdomen and extremities; As a direct and proximate result of the negligence of Defendants and the damage sustained thereby, Plaintiff was caused to undergo extensive debridements and amputations including but not limited to debridement of his gluteal muscles and amputation of his left leg and hip, and has undergone at least twelve additional surgeries including hip disarticulation; Plaintiff continues to have and will continue to have acetabular osteoarthritis and ongoing infected pelvic conditions and his conditions and damages will continue into the future, and Plaintiff will require extensive medical care in the future including surgery, medications, testing and other therapies and medical work and care; Plaintiff has been caused to require a care giver to perform his daily life functions, and will so require care in the future; Plaintiff has suffered significant pain, isolation, and suffering both physical and emotional, and will so suffer in the future; Plaintiff has been

caused to thereby require extensive and additional medical, pharmaceutical, surgical and other health care, including but not limited to nursing, rehabilitation and other care, and has thereby been caused to incur significant medical and health care costs, and costs for medications, therapy, prosthesis, wheel chairs, transportation and the like, and will incur such costs into the future; Plaintiff has suffered disability in his ability to conduct the normal affairs of life, and he requires aid and assistance to perform basic tasks at all times, and he has suffered a significant loss of the enjoyment of life.

WHEREFORE, Plaintiff Carl Fulk prays this Court enter Judgment in their favor and against Defendants, UNITED STATES OF AMERICA, and award such sums as are reasonable and sufficient to compensate them, all in excess of the jurisdictional limits of this Court, for costs of suit, and for such other relief as this Court deems just and proper.

THE LAW OFFICES OF DAVID N. DAMICK

/s/ David Damick
David N. Damick, #6208797
One Metropolitan Square, Suite 2420B
211 North Broadway
St. Louis, Missouri 63102-2733
TEL: (314) 231-0570
FAX: (314) 621-8639
dnd@damicklaw.com
Attorneys for Plaintiff